No. 24-13164

In the
**United States Court of Appeals
For the Eleventh Circuit**

MARTIN COWEN et al.,

*Plaintiffs – Appellants*

v.

SECRETARY OF STATE FOR THE STATE OF GEORGIA,

*Defendant – Appellee*

Appeal from the United States District Court
For the Northern District of Georgia

**APPELLANTS' REPLY**

Bryan L. Sells
The Law Office of
Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212
bryan@bryansellslaw.com

*Attorney for the Appellants*

**Cowen v. Secretary of State for the State of Georgia**
**24-13164**

**Certificate of Interested Persons**
**and**
**Corporate Disclosure Statement**

The counsel below certifies that the following persons and

entities have or may have an interest in the outcome of this case:

Buckley, Allen

Carr, Christopher

Correia, Cristina

Cowen, Martin

Gilmer, Aaron

Heidt, Josiah B.

Libertarian Party of Georgia, Inc.

May, Leigh Martin

McGowan, Charlene S.

Monds, John

Raffensperger, Brad

C-1 of 2

**Cowen v. Secretary of State for the State of Georgia**
**24-13164**

**Certificate of Interested Persons**
**and**
**Corporate Disclosure Statement**
**(continued)**

Sells, Bryan L.

The Law Office of Bryan L. Sells, LLC

Webb, Bryan K.

Willard, Russell D.

Young, Elizabeth

Yu, Diana

<u>**/s/ Bryan L. Sells**</u>
Georgia Bar No. 635562
Attorney for the Appellants
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212
bryan@bryansellslaw.com

C-2 of 2

# Table of Contents

Certificate of Interested Persons and
    Corporate Disclosure Statement ..................................... 2

Table of Contents .................................................... 4

Table of Citations ................................................... 5

Argument .............................................................. 7

   I.    The Secretary's viewpoint-discrimination
        arguments lack merit. ................................. 7

   II.   The Secretary's equal-protection
        arguments lack merit. ................................ 10

   III.  The Secretary's supplementation
        arguments lack merit. ................................ 18

Conclusion ........................................................... 22

Certificate of Compliance ........................................... 24

## Table of Citations

### Cases

*Alves v. Board of Regents of the University System of Georgia*,
804 F.3d 1149 (11th Cir. 2015) ................................................ 12, 18

*Anderson v. Celebrezze*,
460 U.S. 780 (1983) ................................................................. 13, 14

*Clingman v. Beaver*,
544 U.S. 581 (2005) ....................................................................... 13

*Cook v. Gralike*,
531 U.S. 510 (2001) ....................................................................... 14

*Cowen v. Secretary of State*,
22 F.4th 1227 (11th Cir. 2022).................................................. 15, 17

*Cox v. Barber,*
275 Ga. 415 (2002)......................................................................... 14

*DA Mortgage, Inc. v. City of Miami Beach*,
486 F.3d 1254 (11th Cir. 2007) ........................................................ 8

*Dussouy v. Gulf Coast Investment Corp.*,
660 F.2d 594 (5th Cir. Nov. 1981)................................................... 22

*Graveline v. Benson*,
992 F.3d 524 (6th Cir. 2021) ..................................................... 13-14

*Greenlaw v. United States*,
554 U.S. 237 (2008) ................................................................. 11, 18

*Independent Party of Florida v. Secretary, State of Florida*,
967 F.3d 1277 (11th Cir. 2020) .................................. 12, 13, 14, 15

*Jennings v. Stephens,*
    574 U.S. 271 (2015) ........................................................ 11

*Quigg v. Thomas County School District,*
    814 F.3d 1227 (11th Cir. 2016) ................................. 15-16

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) .......................................................... 8

*Sams v. United Food & Commercial Workers International*
    *Union,* 866 F.2d 1380 (11th Cir. 1989) ......................... 16

*United States v. American Railway Express Co.,*
    265 U.S. 425 (1924) ........................................................ 11

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) .......................................................... 8

## Rules

Federal Rule of Civil Procedure 8 ................................... 16

Federal Rule of Civil Procedure 15 ................................. 22

Federal Rule of Civil Procedure 59 ................................. 20

Federal Rule of Civil Procedure 60 ................................. 20

## Other Authorities

11 Charles Alan Wright and Arthur R. Miller,
    *Federal Practice and Procedure* § 2810.1 (3d ed.) ........................ 20

6A Charles Alan Wright & Arthur R. Miller,
    *Federal Practice and Procedure* § 1504 (3d ed.) ........................... 21

6A Charles Alan Wright & Arthur R. Miller,
    *Federal Practice and Procedure* § 1509 (3d ed.) ........................... 18

Bryan A. Garner et al., *The Law of Judicial Precedent* (2016) ....... 15

## Argument

The plaintiffs have litigated this case diligently for almost eight years. Discovery was extensive, and the record is voluminous. This is the third appeal. Yet over all that time, the plaintiffs have never had their day in court on their discriminatory purpose theory—a theory that has been in this case from the start and that has been genuinely disputed as a matter of fact since early in discovery. That factual dispute precludes summary judgment here and warrants reversal.

The Secretary's scattershot brief makes almost a dozen different arguments. Several of those arguments mischaracterize the record or ask this Court to overturn adverse rulings by the district court that he hasn't even appealed. None of the Secretary's arguments have any merit, and this Court should reject them.

## I.   The Secretary's viewpoint-discrimination arguments lack merit.

The Secretary doesn't defend the district court's holding that the plaintiffs abandoned their viewpoint-discrimination claim by

choosing not to move for summary judgment on it. Nor could he. Instead, he advances three arguments to support summary judgment on alternative grounds. (Appellee's Br. 32-38.) None hold water.

First, the Secretary argues that the viewpoint-discrimination cases on which the plaintiffs rely are irrelevant because they didn't involve ballot-access laws. (Appellee's Br. 32.) It's true, of course, that none of those cases involved ballot-access laws. They involved a variety of other governmental restrictions on First Amendment activity, such as noise ordinances and yard-sign limits. *See Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015) (yard signs); *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1266 (11th Cir. 2007) (noise); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (noise). They're still relevant, though, because each of them involved restrictions that, like the ballot-access law here, were content-neutral on their face. And those cases hold that a facially neutral restriction constitutes viewpoint discrimination if it was adopted with the purpose of discriminating against a particular viewpoint. *See, e.g., Ward*, 491 U.S. at 791.

8

Here, the plaintiffs claim that Georgia's petition requirement was adopted in 1943 with the purpose of discriminating against the Communist Party because of its views on racial equality. If proven at trial, that would violate the First and Fourteenth Amendments under all three cases.

Second, the Secretary argues that the plaintiffs "never filed or pursued a First Amendment viewpoint discrimination claim in this action." (Appellee's Br. 33.) But that isn't a fair reading of the record, and it's not what the district court held. Rather, the court held that the plaintiffs abandoned their claim by not moving for summary judgment on it. (App. III:229 at 4.)

Viewpoint discrimination has been an issue here from the start. (App. I:1 at 6.) The issue has been openly disputed since early in discovery. (App. I:57 at 3; App. I:73-10 at 1-2.) And the district court even recognized the claim early in the case. (App. II:113 at 9 n.5.) Obviously, the issue took a back seat to other issues that were litigated first, but the discriminatory purpose theory has been in the case all along.

Finally, the Secretary argues that the plaintiffs abandoned their viewpoint-discrimination claim when they didn't raise it "in opposition to any of the Secretary's motions for summary judgment." (Appellee's Br. 33.) But that, too, isn't a fair reading of the record. As detailed in the appellants' opening brief, the plaintiffs were diligent about preserving their discriminatory-purpose theory whenever the Secretary put it at issue. (Appellants' Br. 21-27.) That's why the district court expressly recognized that the discriminatory purpose theory remained alive after the parties' first and second summary-judgment motions. (App. II:113 at 9 n.5; App. II:159 at 46.)

## II.   The Secretary's equal-protection arguments lack merit.

The Secretary makes five arguments about the plaintiffs' equal-protection claim. (Appellee's Br. 19-32.) All miss their mark.

1.    The Secretary first argues that there "is no genuine dispute of material fact" about the purpose of Georgia's petition requirement. (Appellee's Br. 20.) He bases that argument on the fact that he moved twice in the district court to exclude the

10

testimony of the plaintiffs' expert historian, who testified about the original purpose of the petition requirement. (*Id. at 21.*) But the district court didn't grant those motions, and the Secretary didn't appeal their denial. As a result, the cross-appeal rule prohibits this Court from modifying the district court's judgment to exclude the expert's testimony. *See Greenlaw v. United States*, 554 U.S. 237, 244 (2008) ("an appellate court may not alter a judgment to benefit a nonappealing party"); *see also Jennings v. Stephens,* 574 U.S. 271, 276 (2015) ("an appellee who does not cross-appeal may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary'") (quoting *United States v. Am. Ry. Express Co.,* 265 U.S. 425, 435 (1924)).

The Secretary also ignores the other purpose evidence in the record. There's more than enough evidence in the record—even without expert testimony—from which a reasonable factfinder could conclude that Georgia's petition requirement was enacted in 1943 with the purpose of discriminating against the Communist Party because of its views on racial equality. (Appellants' Br. 15-19.) There's also unrebutted evidence in the record that the petition

requirement was maintained in 1986 with the specific purpose of discriminating against the Libertarian Party. (*Id.* at 20.) On a motion for summary judgment, this Court isn't free to discount or ignore that evidence. *See Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1159 (11th Cir. 2015) (on a motion for summary judgment, the court does "not weigh conflicting evidence or make credibility determinations").

And, finally, the Secretary ignores the fact that he conceded the existence of a factual dispute when he filed his third motion for summary judgment without including a statement of undisputed material facts—telling the district court that his motion presented only an "issue of law." (App. III:209 at 1.) He argued then, as he argues now, that purpose evidence is "immaterial" here, so it didn't matter whether there was a factual dispute. (App. III:211-1 at 2-3.)

2.    Next, the Secretary argues that discriminatory purpose is irrelevant to ballot-access cases under the Equal Protection Clause. (Appellee's Br. 21-24.) He relies on this Court's decision in *Independent Party of Florida v. Secretary, State of Florida*, 967 F.3d 1277, 1281 (11th Cir. 2020), which applied the balancing test

from *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983), to Florida's ballot-access law for presidential elections. But discriminatory purpose wasn't an issue in that case. The panel didn't even address the issue in dicta. *Independent Party* says literally nothing about the standard that applies in ballot-access cases when discriminatory purpose is the issue.

As the appellants pointed out in their opening brief, the *Anderson* test—both as originally formulated and as later implemented by lower courts—requires heightened scrutiny when a ballot-access law is discriminatory. (Appellants' Br. 43-44.) From a first-principles standpoint, that just makes sense: a law designed to protect a person unequally should violate the Equal Protection Clause unless there's some compelling justification. Courts have repeatedly recognized that principle in challenges to discriminatory ballot-access laws. *See Anderson*, 460 U.S. at 794 n.16; *Clingman v. Beaver*, 544 U.S. 581, 603 (2005) (O'Connor, J., concurring) (heightened scrutiny is often necessary to ensure that the state's asserted interests are "not merely a pretext for exclusionary or anticompetitive restrictions"); *Graveline v. Benson*, 992 F.3d 524,

535-39 (6th Cir. 2021) (concluding that a discriminatory ballot-access scheme warranted strict scrutiny); *cf. Cook v. Gralike*, 531 U.S. 510, 524 (2001) (citing *Anderson*); *Cox v. Barber,* 275 Ga. 415, 418 (2002) (citing *Anderson*). The Secretary fails to distinguish these cases, and he fails to identify any authority other than *Independent Party* for his assertion that discriminatory purpose is irrelevant in ballot-access cases.

The Secretary also fails to explain why his proposed standard wouldn't open Pandora's Box, as the appellants explained in their opening brief. (Appellants' Br. 46.) He suggests that a purposefully discriminatory law like the one in the appellants' hypothetical "would likely violate *other* constitutional rights," but he doesn't identify which rights it would violate or explain how the law would violate them. (Appellee's Br. 24.) Perhaps he means that such a law would constitute viewpoint discrimination under the First Amendment. Maybe so, but a hypothetical California statute designed to keep Republicans off the ballot should also violate the Equal Protection Clause.

14

3.     The Secretary also argues that this Court's decision in *Cowen v. Secretary of State*, 22 F.4th 1227 (11th Cir. 2022) ("*Cowen II*"), forecloses the plaintiffs' discriminatory-purpose theories. (Appellee's Br. 24-29.) It does not. *Cowen II* doesn't control here for the same reason that *Independent Party* doesn't control here: discriminatory purpose was not an issue in either decision. In *Cowen II*, moreover, the Court expressly noted that discriminatory purpose was not at issue. *See Cowen II*, 22 F.4th at 1231 n.2. That case therefore cannot have decided that discriminatory purpose is irrelevant to ballot-access cases under the Equal Protection Clause. *See* Bryan A. Garner et al., *The Law of Judicial Precedent* § 4, at 44 (2016) (describing holdings as "the parts of a decision that focus on the legal questions actually presented to and decided by the court").

4.     The Secretary next argues that the plaintiffs never pled a racial discrimination claim and therefore can't raise one in response to his third motion for summary judgment. (Appellee's Br. 29-31.) But that confuses a *claim* with a *theory*.

A single claim can be supported by alternative theories of recovery. *See, e.g., Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227,

15

1235 n.4 (11th Cir. 2016). In employment discrimination cases, for example, one might have a single claim for relief that might support recovery on a mixed-motive theory or a single-motive theory. *See id.* A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It "need not specify in detail the precise theory giving rise to recovery." *Sams v. United Food & Com. Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989).

Here, the complaint raises a claim under the Equal Protection Clause, and it alleges facts that support alternative theories of recovery for that claim. An allegation of discriminatory purpose appears in the complaint and has been disputed as a matter of fact since early in discovery. (App. I:1 at 6; App. I:57 at 3; App. I:73-10 at 1-2.) The Secretary had a full and fair opportunity to conduct discovery on that factual dispute. After discovery, the plaintiffs were diligent about preserving their discriminatory purpose theory whenever the Secretary put it at issue. (*See* Appellants' Br. 21-27.) The plaintiffs' classification theory was litigated first, but—as this

Court recognized—their discriminatory purpose theory remained. *See Cowen II*, 22 F.4th at 1231 n.2.

Because the plaintiffs' discriminatory purpose theory has been in this case since the beginning, there's no basis for this Court to ignore it now, and the factual dispute about that purpose precludes summary judgment.

5. Lastly, the Secretary argues that "there is no evidence in the record of any racially discriminatory effect." (Appellee's Br. 31.) But, again, that's not a fair reading of the record. The plaintiffs' summary-judgment papers identify three exhibits to support their assertion that the petition requirement had a racially discriminatory effect. (App. III:210-2 at 2.) Those exhibits show that the petition requirement had the immediate effect of excluding Black candidates—and White candidates who supported Black equality—from Georgia's ballots. (App. III:210-5 at 1-2; App. III:210-8 at 5; App. III:210-13 at 1-4.) In response, the Secretary didn't identify any contrary evidence; he simply argued that evidence of a racially discriminatory effect is "not material" to the plaintiffs' equal-protection claim. (App. III:211-1 at 2.) The

Secretary also objected to the exhibits on hearsay and authenticity grounds, but the district court didn't sustain those objections. (*Id.*) That's not "no" evidence, and this Court isn't free to exclude or discount it. *See Greenlaw,* 554 U.S. at 244; *Alves,* 804 F.3d at 1159.

## III.  The Secretary's supplementation arguments lack merit.

The Secretary doesn't dispute the basic principle that a district court has discretion to allow supplemental pleadings "at any time during which the action is before it," including "after a trial has concluded" and "on remand after appeal." 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1509 (3d ed.). Instead, he offers three other arguments to defend the district court's denial of the plaintiffs' motion to supplement. (Appellee's Br. 38-41.) All fall short.

First, the Secretary argues that this action wasn't before the district court when the plaintiffs moved for leave to supplement. (Appellee's Br. 38-39.) He concedes, as he must, that a motion to alter or amend suspends the finality of a judgment. (*Id.* at 39.) And he recognizes that the plaintiffs moved to supplement before the

district court resolved their motion to alter or amend the judgment. (*Id.*) But he suggests that a motion to alter or amend suspends the judgment *only for purposes of appeal*—and not for any other purpose. (*Id.*) Yet he cites no case creating such an exception to the general rule, nor does he explain where (if not in the district court) this action was pending when the plaintiffs moved to supplement. If the action wasn't still before the district court, then where was it? And how did the district court have jurisdiction to deny a motion in an action that was no longer pending before it? These questions almost answer themselves. Under bedrock principles of the federal courts, this action was still pending in the district court when the plaintiffs moved to supplement.

Second, the Secretary argues that "the standards under Rules 59 and 60 apply" to a post-judgment motion to supplement—not the standard of Rule 15. (Appellee's Br. 40.) Of course, the district court here applied neither. And the Secretary cites no cases suggesting that Rules 59 and 60 govern a post-judgment motion to supplement. If those standards apply, though, the plaintiffs here can meet them. This should come as no surprise, moreover, because

19

the supplementation standard of Rule 15(d) is much like the standards for relief from judgment under Rules 59 and 60.

Rule 59(e) allows a court to "alter or amend" a judgment after entry. Fed. R. Civ. P. 59(e). The rule doesn't list any specific grounds for altering or amending a judgment, so courts have developed four common grounds for granting such motions. *See generally,* 11 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2810.1 (3d ed.). One of those is to "present newly discovered or previously unavailable evidence." (*Id.*) Rule 60(b) allows a court to relieve a party from a judgment for any one or more of six prescribed reasons, including "newly discovered evidence" and "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(2) & (6). Rule 15(d) also calls for what is essentially newly discovered evidence, because it requires any supplemental pleading to set out a "transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).

Here, the plaintiffs moved to supplement their complaint with events that occurred after the court granted the Secretary's third motion for summary judgment in 2023 but before the court ruled on

the plaintiffs' motion to alter or amend that judgment in late 2024.
Those events—involving the General Assembly's adoption of a new
ballot-access law in 2024—relate to the subject of the original
complaint but weren't discoverable before the court entered
judgment. No matter which standard the district court should have
applied, granting leave to supplement under those circumstances
was both permissible and consistent with the whole purpose of
supplementation: to permit a court to adjudicate an entire dispute
in one action. *See* 6A Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 1504 (3d ed.).

Finally, the Secretary argues that the district court didn't
abuse its discretion when it denied the plaintiffs' motion to
supplement because "supplementation would have the effect of
reanimating this case, delaying resolution of the case, and forcing
the Secretary to litigate, *again*, whether the petition-signature
requirement violates the Equal Protection Clause." (Appellee's Br.
41.) But that misses the point.

The Secretary is going to have to litigate the supplemental
claim no matter what. As the district court recognized, the

21

plaintiffs here could file the supplemental complaint as an entirely new action. (App. III:229 at 5.) Doing so would be more burdensome—not less—because the parties would have to start at square one. The parties would have to re-run the motions practice and discovery that has already been completed here. It's no overstatement to guess, based on the timing of this case so far, that a new action based on the supplemental complaint could take the better part of a decade to litigate. Litigating it here, by contrast, would take less time because the grunt work is done.

That's why the district court's conclusion that allowing the supplemental complaint would delay the resolution of the case is unfounded. Supplementation would *reduce* delay, not increase it. *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 599–600 (5th Cir. Nov. 1981). The district court got the delay precisely backward, and that's an abuse of its discretion under Rule 15(d).

## Conclusion

The Court should reverse the district court's judgment and remand the case for further proceedings.

Dated: April 8, 2025

**/s/ *Bryan L. Sells***

Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212
bryan@bryansellslaw.com

*Attorney for the Appellants*

## Certificate of Compliance

This brief complies with the type-volume limitation of Rule 32(a)(7) of the Federal Rules of Appellate Procedure because, excluding parts of the brief exempted by Rule 32(f), it contains 2,917 words. This brief also complies with the typeface and type-style requirements of Rule 32(a)(5) and (6) because it has been prepared in 14-point Century Schoolbook font using Microsoft Word for Mac.


**/s/ _Bryan L. Sells_**
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212
bryan@bryansellslaw.com

*Attorney for the Appellants*